JOHN M. WYMAN, APPELLANT, V. S. A. SEARLE, APPELLEE.

FILED NOVEMBER 26, 1910. No. 16,172.

1. **Taxation:** FORECLOSURE OF LIEN: DENIAL OF TITLE OF ASSIGNEE: BURDEN OF PROOF. If a defendant denies the plaintiff's title as assignee of a certificate of tax purchase, the burden of proof is

upon the plaintiff to establish his title, and possession of the certificate without proof that it was assigned to, or owned by, him will not satisfy that burden.

2. ———: ———: OFFER TO CONFESS JUDGMENT. In such a case, if the certificate represents taxes levied for general purposes, and assessments made by the officers of an irrigation district, an offer in the defendant's answer to confess judgment for the general taxes does not admit the plaintiff's title to the lien created by the district assessments.

3. ———: SALE OF WRONG TRACT: SUBROGATION. A county treasurer has no authority to sell one tract of land for the taxes levied upon another and distinct parcel of real estate; but, if the tracts were separately assessed and taxed, the sale will subrogate the tax purchaser to the lien of the public.

4. Judgment: IRRIGATION DISTRICTS: CONFIRMATION OF BOND ISSUES: EXCHANGE OF BONDS FOR PROPERTY. A special proceeding prosecuted under section 59 *et seq.*, ch. 70, laws 1895 (Comp. St. 1895, ch. 93*a*, art. III, sec. 59 *et seq.*) is an action *in rem*, and, if the court acquired jurisdiction of the subject, its decree cannot be successfully assailed in a collateral proceeding; but the statute does not authorize the court to confirm the exchange of bonds for property.

5. Waters: IRRIGATION DISTRICTS: EXCHANGE OF BONDS FOR PROPERTY. Section 10 of the act, *supra*, in 1897 authorized the directors of an irrigation district to exchange its bonds at par to pay for irrigation works, ditches, canals and reservoirs constructed or partially constructed within the district, and that authority is not limited by the provisions of section 14 of the act.

6. ———: ———: BONDS: BONA FIDE PURCHASERS. If the records of an irrigation district do not disclose that its directors were financially interested in the sale of an uncompleted ditch by another corporation to the district, an innocent holder for value of the district bonds delivered as a consideration for that sale may enforce payment thereof.

7. ———: ———: TAXES: AUTHORITY TO LEVY. Section 19 of the act, as amended by chapter 78, laws 1899, authorizes the directors of an irrigation district to levy taxes upon all real estate subject to taxation within the district for the purpose of creating a fund to pay for the upkeep of the ditch and the incidental expense of the district.

8. ———: ———: ———: COLLECTION: AUTHORITY OF COUNTY TREASURER. Said section, as amended by chapter 78, laws 1899, authorizes a county treasurer to receive in satisfaction of a general district tax warrants drawn upon the fund, but the

treasurer has no authority to accept the district bonds, or coupons clipped therefrom, in satisfaction of the general levy.

9. ——: ——: ——: ——: ——: SUBROGATION. The mistake of a treasurer in accepting coupons in payment for district general taxes will not deprive the public of its right to collect such taxes, nor will such payment subrogate the purchaser to the rights of the district.

10. ——: ——: PAYMENT FOR CONSTRUCTION WORK. Prior to March 31, 1899, the directors of an irrigation district did not have authority to obligate the district to pay for construction work until they had first created a construction fund.

11. Judgment: CONCLUSIVENESS: CANCELATION OF IRRIGATION DISTRICT TAXES. A *bona fide* purchaser for value of land for the taxes levied thereon by an irrigation district is not bound by a decree against the county treasurer and the district canceling those taxes, but entered in an action commenced subsequent to his purchase, and to which neither he nor his predecessor in title was a party.

12. Taxation: TENDER: INTEREST. If a property owner tenders the treasurer the amount of his general tax, but refuses to pay an invalid assessment, he should not be required to pay interest thereafter, provided he has been at all times subsequent thereto able, ready and willing to pay his taxes, but the proof should be clear and satisfactory to give him the benefit of the rule, and it will not be extended to doubtful cases nor to an instance where the property owner has offered, in an answer to a petition for the foreclosure of the tax lien, to pay the legal taxes with interest.

13. Estoppel: SALE OF LAND SUBJECT TO TAXES. The owner of real estate is not estopped to deny the legality of taxes levied thereon because he sold the land entirely on credit subject to taxes, and received title back from his grantee by a deed which also excepted taxes, if, as a matter of fact, the taxes formed no part of the consideration for the last transfer.

14. Waters: IRRIGATION DISTRICTS: VALIDITY OF TAX: ESTOPPEL. If the owner of real estate situated in an irrigation district receives no benefit from the construction of a ditch or from the water flowing therein, and no other grounds for an estoppel exist, he is not estopped from denying the legality of taxes laid to pay for that improvement.

APPEAL from the district court for Loup county: JAMES N. PAUL, JUDGE. *Reversed.*

*A. S. Moon* and *E. J. Clements,* for appellant.

*C. I. Bragg, S. A. Searle* and *H. A. Robbins, contra.*

ROOT, J.

This is an action to foreclose an alleged tax lien. The plaintiff prevailed as to part of his demand and has appealed. The defendant Searle has prosecuted a cross-appeal.

Some of the questions of law presented for our consideration should be determined, because they will be involved if the case is again tried in the district court. Mr. Searle will be referred to as the defendant. The defendant owns the east half and the northwest quarter of the northwest quarter and lot 4 in the southwest quarter of the northwest quarter of section 10, in township 22 north, of range 20 west of the sixth P. M. in Loup county, Nebraska. He also owns lot 3 in the southwest quarter of said section. The Loup river severs about 12 acres in the southwest corner of the northwest quarter from the remainder of said quarter section, and divides about 18 acres in the northeast corner of the southwest quarter from the remainder of that quarter section. The last tract is described as lot 3.

In 1894 certain individuals residing in the neighborhood of the defendant's land incorporated under the name of the Newton Irrigation Company for the purpose of constructing an irrigation canal and through that agency partially dug said ditch. In July, 1895, the stockholders of said corporation, in conjunction with other persons, formed an irrigation district under the provisions of chapter 70, laws 1895 (Comp. St. 1895, ch. 93*a*, art. III), for the purpose of acquiring the ditch and franchises of the irrigation company and completing said irrigation project. After the district was formed an estimate was made by an engineer of the extent and cost of the proposed ditch, including the value of the ditch to be acquired from

the company, and the electors within the district voted to
authorize the execution and issuance of 210 district bonds,
each one of the par value of $100, to pay for said improve-
ments.   The litigants stipulated that the district court
for Loup county, upon the application of some person not
described in the stipulation, confirmed the organization of
said district and the issuance of said bonds.   The bill of
exceptions discloses that the directors of the district while
in session passed a resolution authorizing the secretary,
upon receipt of a warranty deed from the irrigation com-
pany conveying all of its property to the district, to de-
liver to said company 175 of the district bonds to be ac-
cepted by the company at par.   Subsequently, in 1897,
the deed was received and 174 of the bonds were delivered
to the company.   Thereafter A. C. Abbott contracted with
the district to complete the ditch and equip it with all
necessary appliances.   Mr. Abbott performed his contract
to the satisfaction of the directors of the district and its
bonds numbered 1 to 10, inclusive, were delivered to him
June 8, 1898, and its bonds numbered 11 to 31, inclusive,
were delivered to him November 26, 1902, in payment for
his services.   Prior thereto the bonds had been advertised
for sale, and Abbott had bid 95 per cent. of the par value
therefor.   He did not pay cash for the bonds, but accepted
them at par upon his demand against the district.   In the
years 1897 to 1903 all lands subject to taxation in the dis-
trict were taxed to create an interest fund and a district
general fund.   The defendant refused to pay those assess-
ments, and the county treasurer refused to accept payment
for state, county and school district taxes unless at the
same time the district taxes were paid.   In August, 1905,
at private tax sale, a Mr. Bleakley procured from the
treasurer a tax sale certificate for the northwest quarter
of said section 10, and the plaintiff alleges that he is the
owner of that certificate and the lien evidenced thereby.

    In December, 1907, the district court for Loup county
rendered a decree in an action wherein a Mr. Strohl and
the defendant herein and other owners of land within the

irrigation district were plaintiffs, and said district, the irrigation company and the officers of those corporations, as well as the county treasurer and other individuals, were defendants, and adjudged that the bonds paid to Abbott for his work and certain other bonds in the hands of parties to that suit were void; that 21 bonds owned by a Mr. Tillman, defendant in that action, were valid; and that the court did not know, and would not attempt to determine, whether bonds held by individuals not parties to that suit were void or valid, but canceled all taxes levied by the officers of said district. The record does not disclose whether said suit was pending at the time the Bleakley certificate of tax sale was issued, but we assume from statements made at the bar during oral argument that the sale preceded the institution of that suit. The district court foreclosed a lien in plaintiff's favor for the general taxes and for the taxes levied for maintaining the ditch, but held that all of the taxes levied for interest upon the irrigation district bonds were invalid.

Most of the questions material for an understanding of the rights of the parties and properly presented in the record can be disposed of upon the defendant's cross-appeal. In the first place, the defendant argues that the plaintiff does not own the certificate in suit. An assignment purporting to have been made by Mr. Bleakley appears upon the back of the instrument, but there is no proof that he made the assignment or parted with his title to the certificate. The plaintiff admits in his testimony that he received the instrument from a Mr. Lashmett, and that the name of Lenora Lashmett, the first assignee, if the instrument were assigned by Bleakley, was indorsed after Mrs. Lashmett departed this life. By section 20, art. III, ch. 93a, *supra,* taxes levied by the directors of irrigation districts are made a lien upon the real estate affected thereby, and all of the provisions of the revenue law for the collection of taxes apply to irrigation district taxes. Section 117, art. I, ch. 77, Comp. St. 1901, in force at the time the taxes in suit were levied, and section 210,

art. I, ch. 77, Comp. St. 1909, in force at the time this case was commenced, provide that a certificate of tax purchase "shall be assignable by indorsement, and an assignment thereof shall vest in the assignee, or his legal representative, all the right and title of the original purchaser." There being no evidence that Bleakley assigned the certificate or that Mr. Lashmett had any title thereto, the plaintiff has not proved title to the certificate. *Schroeder v. Nielson*, 39 Neb. 335. This defense does not apply to the general taxes because the defendant in his answer offers to confess judgment therefor, but he does not thereby waive his defenses to the irrigation taxes nor admit that the plaintiff owns any lien created by those levies. *Avery v. Straw*, 30 Me. 458; *Griffin & Adams v. Harriman*, 74 Ia. 436.

The defendant complains that the county treasurer included in the certificate the taxes levied upon lot 3, in the southwest quarter of section 10, and the proof supports his contention; but, if we understand the court's decree, those taxes are not made a lien upon the defendant's land situated in the northwest quarter of that section, nor does the plaintiff recover therefor against lot 3 in the southwest quarter thereof.

It was argued at the bar by the defendant that inasmuch as the certificate described the northwest quarter of the section, a part whereof he did not own, and also included taxes levied upon lot 3 in the southwest quarter, the certificate and the tax are alike void. In *Spicch v. Tierney*, 56 Neb. 514, we held that, where contiguous tracts of land owned by different parties at the time taxes are levied thereon are jointly valued for taxation and taxed, the tax cannot be apportioned and is void; but in the case at bar each lot and 40-acre tract is separately assessed and taxed, so that, while the sale and certificate are irregular, the transactions are sufficient to subrogate the purchaser to the lien and all of the rights of the public with respect to the tracts of land owned by the defendant and situated in the northwest quarter of the section, but the decree

should not describe the entire quarter section because the
title of the owner of the fractional lot south of the Loup
river, but in the northwest quarter of section 10, would
be clouded thereby. Having determined that the evidence
is insufficient to sustain the plaintiff's title to the public's
lien for the district taxes, we should either modify, and,
as modified, affirm, the decree of the district court, or re-
verse the decree and remand the cause for another trial.
We conclude the latter course should be pursued because
the plaintiff should be permitted to prove title to the cer-
tificate in suit and the validity of the tax involved in this
foreclosure. It is the settled policy of the law in -Ne-
braska to protect a tax purchaser to the extent that his
money has satisfied valid tax liens upon the real estate de-
scribed in his certificate of purchase. *Grant v. Bartholo-
mew,* 57 Neb. 673; *Carman v. Harris,* 61 Neb. 635. If the
proceedings prosecuted in the district court for Loup
county, wherein a decree was rendered confirming the
organization of said district, were commenced by some
person having authority to do so, and the court acquired
jurisdiction to render its judgment, that decree cannot be
successfully assailed in a collateral proceeding. *Board of
Directors of Alfalfa Irrigation District v. Collins,* 46 Neb.
411; *Crall v. Poso Irrigation District,* 87 Cal. 140; *Rialto
Irrigation District v. Brandon,* 103 Cal. 384; *Fallbrook
Irrigation District v. Bradley,* 164 U. S. 112. If the district
were created, the statute (Comp. St. 1899, ch. 93a, art. III,
sec. 19) authorized its officers to levy an annual general
tax upon the real estate in the district subject to taxation
to pay for the upkeep of the ditch and the incidental ex-
pense of the district. Part of the tax lien foreclosed by the
district court is represented by a district general tax.
Bleakley paid and the county treasurer received in pay-
ment for all of the irrigation tax, the general levy as well
as the bond interest fund, coupons clipped from certain of
the district bonds. Section 19 of the act under considera-
tion, as amended by chapter 78, laws 1899, authorizes the
treasurer to receive in satisfaction of a general levy war-

6

rants drawn upon that fund, and for a bond interest levy coupons clipped from district bonds, but no officer is authorized to receive the coupons in payment of a general levy. Neither the state nor any of its subdivisions can be deprived of its revenue or of the lien created thereby by a mistake of the tax collector. *Johnson v. Finley*, 54 Neb. 733. The decree is therefore erroneous in so far as it forecloses a lien for the district general levy. Mr. Bleakley, the tax purchaser, did not acquire a lien for district interest taxes, unless he paid therefor in cash or in coupons clipped from valid bonds or bonds purchased by some of his predecessors in title under such circumstances as to constitute them *bona fide* holders thereof.

The defendant argues that since it appears that the officers of the irrigation company conspired with the district directors and the engineer, upon whose estimate the bond election was held, to grossly overestimate the value of the uncompleted ditch of the irrigation company, and since the officers of the district were stockholders in the company, the holders of the 174 bonds delivered to pay for that ditch did not acquire title to those securities. It is also argued that section 24 of the act is a limitation upon the power of the directors of the district, and compels them to sell its bonds and create a fund before they can impose a liability upon the district for the purchase or the construction of a ditch. Section 10 of the act aforesaid provides, among other things: "Said board shall also have the right to acquire by purchase any irrigation works, ditches, canals or reservoirs already constructed or partially constructed for the use of said district. In case of purchase the bonds of the district hereinafter provided for may be used at their par value in payment." Prior to the amendment of section 24 in 1899, it did not refer to the exchange or sale of bonds, and was not intended to limit the specific authority theretofore granted the directors by section 10, *supra*. The provisions of section 14 of the act, to the effect that no bonds shall be sold until the directors shall make and enter upon the records a

resolution of their intention to sell the bonds and shall have advertised them for sale, is a plain limitation upon the power of the directors to sell, and as plainly not a limitation upon their authority to exchange, the district bonds. There is nothing in the context or general purpose of the original act to in any manner modify the foregoing construction of said section. The directors, therefore, were authorized to use the district bonds at par to pay for an uncompleted ditch within the district. We find nothing in the records of the district to advise a stranger that its officers were financially interested in the irrigation company, or that they had acted fraudulently or irregularly in purchasing the company's property. The decree of confirmation hereinbefore referred to does not adjudicate the legality of the transfer of the bonds to the irrigation company. The statute only authorizes a confirmation of bonds issued for the purpose of sale. *Stimson v. Alessandro Irrigation Co.*, 135 Cal. 389.

Prior to the amendment of section 24 in 1899, the directors did not have authority to exchange its bonds in payment for construction work nor to enter into contracts in the name of the district until a construction fund had been created by the sale of its bonds. No construction fund existed at the time the aforesaid contract was made with Mr. Abbott and the contract is therefore void. *Lincoln & Dawson County Irrigation District v. McNeal*, 60 Neb. 613; *Stimson v. Alessandro Irrigation Co., supra; Leeman v. Perris Irrigation District*, 140 Cal. 540; *Stowell. v. Rialto Irrigation District*, 155 Cal. 215. Whether any or all of the bonds issued by the district or the coupons clipped therefrom were at any time in the hands of innocent purchasers is not apparent from the record before us, and we do not desire to embarrass a future trial of the case by any suggestions upon that subject. It is apparent that coupons clipped from some of those bonds were transferred by Mr. Bleakley to the county treasurer in payment of the interest tax levied upon the defendant's land, but the record discloses such

fraud and bad faith on the part of the directors in issuing all of the bonds referred to that it devolved upon the plaintiff to bring forward evidence to prove that either he or some person through whom he claimed title to the coupons in question was an innocent purchaser. *Haggland v. Stuart,* 29 Neb. 69; *Violet v. Rose,* 39 Neb. 660; *Kelman v. Calhoun,* 43 Neb. 157; *National Bank v. Miller,* 51 Neb. 156; *Thompson v. West,* 59 Neb. 677; *Lahrman v. Baumann,* 76 Neb. 846. The district court for Loup county in the case of Strohl against Newton Irrigation district, canceled all taxes levied by the officers of that district, but that decree does not affect the right of a holder of the bonds who is not in privity with the parties to that action to enforce any legal claim he may have against the district. *Helphrey v. Redick,* 21 Neb. 80; *Clapp v. Otoe County,* 45 C. C. A. 579; *Kinney v. Eastern Trust & Banking Co.,* 59 C. C. A. 586; *Hawley v. Fairbanks,* 108 U. S. 543. The defendant's land, however, should be held for no more of the district tax levy than was paid for by coupons owned at some period by a *bona fide* holder.

The proof of the defendant's tender to pay state, county and school taxes levied upon his land is not so definite as to time and amount as to bring him within the protection of the rule announced in *State v. Several Parcels of Land,* 80 Neb. 424, and his offer in his answer to confess judgment for those taxes, with interest, justified the district court in adding interest to the principal.

The plaintiff, in support of his appeal, argues that since the defendant, subsequent to the levy of the taxes in dispute, conveyed the land by a deed which excepted those taxes, and thereafter received title to the real estate by a deed which also excepted all taxes, he is within the rule announced in *Eddy v. City of Omaha,* 72 Neb. 550. In the cited case invalid assessments were deducted from the purchase price of real estate, and we held that the grantee was estopped from denying the validity of the taxes which formed part of the consideration for his purchase. But in the case at bar the defendant sold the land

upon credit.   Subsequently the grantee, not having paid any of the purchase money, reconveyed the real estate to Mr. Searle and paid rent during the time said grantee controlled the land.   The taxes formed no part of the consideration moving from Mr. Searle for the transfer of title to him, and the transaction does not estop him from defending against the tax in question.   Nor do we think there is any proof to support the argument that, by reason of using water from the ditch, the defendant is estopped from questioning the tax.   The evidence is undisputed that the defendant made no use of the ditch and that his land was not increased in value by reason of its construction.

The judgment of the district court is reversed, the cause is remanded for further proceedings, and the costs of this appeal are taxed to the plaintiff.

REVERSED.