CENTRAL NATIONAL BANK, APPELLEE, v. JOHN ERICSON, APPELLANT.

FILED NOVEMBER 13, 1912.    No. 16,793.

1. **Appeal: DIRECTING VERDICT: REVIEW.** In reviewing a direction to the jury to return a verdict in favor of plaintiff, the appellate court will assume the existence of every material fact which the evidence on behalf of defendant establishes or tends to prove, and give him the benefit of proper inferences from such facts.

2. **Bills and Notes: DEFENSE OF FRAUD: BURDEN OF PROOF.** Where fraud in the inception of a note is pleaded as a defense and supported by proof, in an action by an indorsee against the maker, the burden is on plaintiff to show he is a *bona fide* holder.

3. ———: **BONA FIDE PURCHASER: QUESTION FOR JURY.** In a suit on a promissory note, a peremptory instruction in favor of plaintiff on the ground that the note was purchased from an innocent holder is erroneous, where reasonable men may properly infer from all the facts and circumstances of which there is proof that the holder in making the purchase acted on behalf of plaintiff, who had actual knowledge of valid defenses.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE.   *Reversed.*

*J. C. Saylor, John A. Miller* and *John N. Dryden,* for appellant.

*N. P. McDonald,* contra.

ROSE, J.

This is a suit on a promissory note for $500, dated February 12, 1909, and due October 1, 1909.   On the face of the instrument John H. Bearss is payee and John Ericson maker.   The Central National Bank of Kearney is plaintiff and John Ericson, John H. Bearss and Frank E. Wilcox are defendants.   *Bona fide* transfers for value before maturity without notice of defenses, from Bearss to Wilcox, from Wilcox to the State Bank of Riverdale, and from the latter to plaintiff, are alleged in the petition.   For the purposes of review the defenses pleaded by Ericson may be summarized as follows:   There was no consideration for the note.   With others aggregating $2,000 it was given to Bearss for a one-sixth interest in a patent right for a five-horse doubletree.   With the aid of Wilcox, Bearss falsely represented the article to be a new and workable invention of the value of $100,000.   It would not work and was of no value.   Bearss, with the aid of Wilcox, fraudulently induced Ericson to sign the note by falsely representing to him that it contained the words, "given for a patent right on a five-horse doubletree, and void if doubletree fails to work," and, "note to bear 7 per cent. interest when business pays 10 per cent."   Ericson is an old man and cannot read without his glasses.   He did not have them with him when he signed the note, and did not know what he was signing, but relied upon the false representations of Bearss and Wilcox as to the contents of the note.   Before he signed it, they entered into an agreement with him that the notes would not be sold, but would be returned to him, if the patent right did not prove to

be beneficial. That agreement was violated. Plaintiff procured possession of the note with full knowledge of the facts constituting the defenses pleaded. The State Bank of Riverdale was not a purchaser in good faith, but had due notice of the infirmities in the note before it purchased and transferred it. After the parties had adduced their proofs on both sides of the issues raised by the pleadings, the following charge was given: "The court instructs the jury to find for plaintiff on the ground that the Riverdale bank became an innocent purchaser of the note, and plaintiff, through it, became an innocent holder." From a judgment in favor of plaintiff, Ericson has appealed.

The correctness of the peremptory instruction in favor of plaintiff is the controlling question. Since the trial court directed a verdict in favor of plaintiff, it is necessary, in reviewing that ruling, to assume the existence of every material fact which the evidence on behalf of Ericson establishes or tends to prove, and to give him the benefit of proper inferences from such facts. *Nothdurft v. City of Lincoln*, 66 Neb. 434; *Paxton v. State*, 59 Neb. 460; *Harris v. Lincoln Traction Co.*, 78 Neb. 681; *Tate & Ehrhardt v. Loney*, 85 Neb. 559.

The answer alleges, and the evidence tends to show, fraud in the inception of the note. It was incumbent on plaintiff, therefore, in making its case to comply with the following rule of law: Where fraud in the inception of a note is pleaded as a defense and supported by proof, in an action by an indorsee against the maker, the burden is on plaintiff to show he is a *bona fide* holder. *Wyman v. Searle*, 88 Neb. 26; *Norwood v. Bank of Commerce*, 77 Neb. 205; *Lahrman v. Bauman*, 76 Neb. 846; *Thompson v. West*, 59 Neb. 677; *National Bank of Battle Creek v. Miller*, 51 Neb. 156; *Kelman v. Calhoun*, 43 Neb. 157; *Violet v. Rose*, 39 Neb. 660; *Haggland v. Stuart*, 29 Neb. 69. This feature of the case must also be considered in reviewing the peremptory instruction.

Ericson testified that during the second week in March,

1909, he learned the notes were not drawn according to agreement, and that he then notified all the banks in Kearney, including plaintiff and its cashier, of his defenses, and warned them not to buy the notes; that plaintiff's cashier, in response to the notice, said, "I will not buy them;" that after Ericson had been notified in October, 1909, that the note in suit was in possession of plaintiff, he went into its place of business and inquired of its cashier: "Didn't I notify you last spring not to buy it?" He further testified that the cashier replied: "Yes; I don't want you to have any hard feelings against me. I haven't bought this note. I just took it as collateral from Wilcox. Bearss owed something on a threshing machine and I took them as collateral. If I can't collect from you, I will have to collect out of Wilcox." Other evidence tends to prove: The business of the State Bank of Riverdale is conducted in a little town a few miles from Kearney. Its capital stock is $5,000. Legally it cannot make an individual loan in excess of $1,000. It was a correspondent of plaintiff. It kept an account at plaintiff's bank. It bought commercial paper for plaintiff. Though Wilcox transacted business with plaintiff in Kearney at a time when it was buying such paper, he entered into correspondence with the State Bank of Riverdale and offered to sell two of Ericson's notes at a discount. The three notes, aggregating $2,000, were received by the State Bank of Riverdale March 31, 1909. The same day it sent to Wilcox its draft on plaintiff's bank for $1,650. A few hours after the purchase it sent the note in suit to plaintiff without making any indorsement thereon, and received credit on its account for the sum paid to Wilcox. The State Bank of Riverdale made no profit on the transaction, but understood in advance that the notes should be sent to plaintiff when purchased from Wilcox. No transaction showing a transfer from Wilcox to the State Bank of Riverdale was entered on its books, nor did the note itself show that the State Bank of Riverdale was a transferee. From all the facts and circumstances of which

there is proof, reasonable men might properly infer that the State Bank of Riverdale acted for plaintiff in purchasing the note in suit, when the latter had full knowledge of the defenses thereto, and that therefore plaintiff was not an innocent holder, as instructed by the trial court. In this view of the testimony the case ought to have been submitted to the jury.

Reasons for this conclusion were recently stated by the supreme court of Iowa as follows: "It is ordinarily to be expected, in these cases, that the purchaser will testify to his good faith and want of notice, and that defendant is compelled to rely upon circumstantial evidence to rebut such showing. Whether plaintiff has sufficiently satisfied the burden resting upon him and made good his claim to be an innocent purchaser is therefore a question for the jury, save in those instances where the testimony is not only consistent with the good faith of such purchase, but is such that no fair-minded person can draw any other inference therefrom. A categorical denial of notice or knowledge is something which in many, if not in most, instances cannot be opposed by direct proof; and the credibility of the witnesses, their interest in the case, the reasonableness or unreasonableness of their statements, the time, place and manner of the transaction, its conformity to or its departure from the ordinary methods of business, and all the other facts and circumstances which, though of slight moment in themselves, yet, when taken together, give character and color to the purchase under inquiry, constitute a showing which the court cannot properly pass upon as a matter of law." *Arnd v. Aylesworth*, 145 Ia. 185, 29 L. R. A. n. s. 638.

For the error in directing a verdict for plaintiff, the judgment is reversed and the cause remanded for further proceedings.

REVERSED.

HAMER, J., dissenting.

I dissent from the views expressed in the majority opin-

ion upon the ground that there was no offer upon the part of the defendant to prove that the cashier or any officer of the plaintiff bank had any knowledge of the alleged fraudulent inception of the note sued on at the time the same was delivered to the plaintiff. Nor is there sufficient evidence, as it seems to me, to prove any improper purpose upon the part of any officer of the plaintiff.