C. M. EMPSON, RECEIVER, APPELLEE, v. V. E. RICHTER: ESSIE E. DAVIS, APPELLANT.

FILED JULY 1, 1925. No. 23147.

1. **Bills and Notes:** ACCOMMODATION MAKER. An accommodation maker of a promissory note is not liable to the party accommodated.

2. ———: ———: QUESTION FOR JURY. Evidence examined and set out in the opinion, *held* sufficient, in the absence of any contradiction, to support the defendant's theory that her signature to the notes was for the accommodation of the bank, and that the court erred in directing a verdict for the plaintiff.

APPEAL from the district court for Keith county: J. LEONARD TEWELL, JUDGE. *Reversed.*

*Hoagland & Carr, Carlson & Erickson* and *W. R. Ramsey*, for appellant.

*L. O. Pfeiffer* and *Halligan, Beatty & Halligan*, contra.

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, THOMPSON and EVANS, JJ., and SHEPHERD, District Judge.

DAY, J.

Action by C. M. Empson, receiver of the Exchange Bank of Ogallala, against V. E. Richter and Essie E. Davis to recover a balance alleged to be due upon two promissory notes executed by the defendants in which the bank was named as payee. At the close of the evidence, on motion of the plaintiff, the court directed the jury to return a verdict in favor of the plaintiff and against both defendants for $7,385, being the amount claimed to be due by plaintiff after deducting a credit of $4,000, arising from the sale of certain cattle. From a judgment upon the verdict, the defendant Davis has appealed.

The petition contained the usual allegations in an action to recover upon a promissory note. The notes were payable to the Exchange Bank, dated April 7, 1921, due in six months, and called for the payment of $5,000 and $5,478.17, respectively, with interest at 10 per cent. from date. Defendant Richter filed no answer. Essie E. Davis filed an answer in which she admitted that the plaintiff is the receiver of the Exchange Bank, and as such is the holder of the notes sued on. By way of defense she alleged that the two notes were signed by her at the request of the Exchange Bank, solely as an accommodation to the said bank, and under a promise made to her at the time by the bank that she would not be called upon to pay the notes or any part thereof. The answer further detailed the circumstances of her signing the notes, and alleged that she received no consideration for or on account of the execution of the same.

The reply denied that the notes were signed as an accommodation to the bank, and denied that there was no consideration for the signing of the notes by the defendant Davis. The reply further alleged that on or about October 22, 1920, the defendant, V. E. Richter, was indebted to the Exchange Bank in the sum of approximately $26,000, which amount was secured by a chattel mortgage upon a herd of cattle then owned by defendant Richter; that the indebtedness was long past due and the chattel security wholly inadequate

therefor; that the Exchange Bank notified Richter that it could no longer carry him for the indebtedness, and that it would proceed to sell the chattel security unless additional security was procured by Richter, and then agreed that the time of payment would be extended six months if he would procure defendant Davis to execute notes for a part of the indebtedness then owing by Richter to the bank; that, pursuant to this agreement, defendant Davis, who was a sister-in-law of Richter, agreed with the bank to sign two notes of $5,000 each with defendant Richter, in consideration that the Exchange Bank would extend the time of payment of the indebtedness owing by Richter; that the indebtedness was extended for six months; that at the time the Exchange Bank entered into a writing that, in consideration of defendant Davis signing the notes, the bank agreed to apply upon the notes the proceeds of the sale of the cattle held under the chattel mortgage.

From the pleadings it seems clear that the main issue in the case was whether defendant Davis was an accommodation maker for the accommodation of the bank as claimed by her. If she was, then the plaintiff could not recover against her.

Upon the trial the plaintiff offered testimony tending to establish the execution and identity of the notes, the amount realized from the sale of the chattel security, the amount due upon the notes, and then rested.

The defendant Davis then offered testimony tending to support her theory of the case as pleaded in her answer, the witnesses for the defense being the two defendants. At the close of the testimony for the defense the trial court ruled that defendant Davis signed the notes in suit in consideration of an extension of the time of payment of the debt due by Richter to the bank, and for his accommodation, and not for the accommodation or benefit of the bank, and accordingly directed a verdict for the plaintiff.

It is now urged by the defendant that the court erred in so directing a verdict, and in failing to submit to the jury defendant's theory of the case.

The testimony on behalf of the defendant tended to show that the notes in suit were renewals, with interest added, of two notes of $5,000 each, dated October 22, 1920, in which the bank was named as payee, due in six months, and signed by both of the defendants. The testimony further tended to show that on October 22, 1920, the Exchange Bank was holding Richter's past-due notes for about $26,000; that it held as security for this indebtedness a chattel mortgage on a mixed herd of about 200 head of cattle, many of which were one and two years old; that the cattle were not ready for the market; that the security was wholly inadequate to secure the payment of the debt; that the bank held as security all of Richter's property; that the bank appreciated that a loss was inevitable; that the bank was not able to carry this large loan; and that in order to render its loss as light as possible it was the desire of the bank that the cattle be kept a year longer in order that the younger cattle might become more valuable, and that a better market might be secured. At that time Richter realized that the chattel security could not be made to pay out, and he was then willing to quit and turn over the property to the bank.

Under this state of facts the bank solicited Mrs. Davis to sign notes aggregating $10,000 as an accommodation to the bank to enable it to float the paper for a year, till the stock grew more valuable. After this talk, Mrs. Davis signed two notes of $5,000 each with Richter, without consideration, due in six months, for the accommodation of the bank, with the distinct understanding that she was not to be called upon to pay one cent, that her signature was for the purpose of enabling the bank to float the paper, and that at the end of six months the notes were to be renewed for six months longer. At the same time Richter agreed that he would put in his time and care for the cattle. At that time the bank signed a writing to the effect that the first money realized on the sale of the cattle was to be credited on the notes. When the notes became due they

were renewed for a period of six months on the same conditions as the original notes.

The bank took possession of the cattle under an agreement with Richter on June 11, 1921, and they were sold at a private sale for $4,000.

While there is some reference in the cross-examination of Richter which seems to indicate that there was an extension of the time of payment of his indebtedness, we are of the view that a fair construction of the entire evidence tends to show that the extension, if any, was for the benefit of the bank, rather than Richter. Mrs. Davis' testimony is very positive that it was distinctly understood between her and the bank that she was signing the notes as an accommodation to the bank, and that she was not to be called on to pay any part of the notes. The testimony of Mrs. Davis was not denied by any one.

It is fundamental that an accommodation maker or indorser is not liable to the party accommodated. The mere fact that Richter may have received some benefit out of the transaction does not necessarily determine that he was the accommodated party. Under the evidence we think the trial court, if it had been requested to do so, would have been justified in directing a verdict for the defendant Davis. In any event the court should have submitted the question at issue to the jury, and it erred in not doing so.

We are not unmindful of our holding in *Farmers Nat. Bank v. Ohman*, 112 Neb. 491. In that case, however, it appeared that Mrs. Ohman was an accommodation maker for her son, and not the bank, and that there was a consideration for her signing the note.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.