RUSSELL C. WILLIS, APPELLANT, V. WINFIELD SPONSLER ET AL., APPELLEES.

FILED MAY 15, 1928. No. 25593.

*C. P. Anderbery,* for appellant.

(1)

*Charles A. Chappell* and *Harvey M. Wilson, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON, EBERLY and HOWELL, JJ., and REDICK, District Judge.

ROSE, J.

This is a suit in equity to foreclose a mortgage for $1,925.33 on a hotel and two lots of ground in Wilcox, Kearney county. The mortgage and the note that it purported to secure were dated March 16, 1922, and were payable September 15, 1922. Russell C. Willis, payee and mortgagee, is plaintiff. Winfield Sponsler and Mattie Sponsler, husband and wife, makers and mortgagors, are defendants.

In an answer to the petition defendants admitted the signing of the note and the mortgage, but alleged that the real estate in controversy was their homestead, that the mortgage was never delivered, and that it and the note were given without consideration as an accommodation to plaintiff.

Upon a trial of the issues raised by the pleadings the district court canceled the mortgage and dismissed the action. Plaintiff appealed.

It is argued by plaintiff that an unpaid debt evidenced by two prior notes aggregating with interest the amount of the note in suit was a valid consideration for the latter. The prior notes were executed by defendants in favor of plaintiff under the following circumstances: Winfield Sponsler purchased from plaintiff March 30, 1920, a half section of land in Wichita county, Kansas, for $6,720. Later, to secure part of the unpaid purchase price, defendants executed a mortgage for $3,200 on the Kansas land. In addition they gave a secured interest coupon note for $192 and also an unsecured note for $1,600 on the purchase price, both dated March 1, 1921, and payable March 1, 1922. For an amount equal to the sum of these notes and interest, or $1,925.33, defendants, March 16, 1922, signed a third note and also a mortgage on the hotel property in

Wilcox, Nebraska. This third note and the mortgage purporting to secure it, while unrecorded, were left in the First National Bank of Wilcox, Nebraska, in care of William Halstead, cashier, where they remained more than three years. Plaintiff eventually procured possession of them, had the mortgage recorded June 6, 1925, and brought this suit June 12, 1925, to foreclose the mortgage.

On the issue of consideration for the third note plaintiff testified in substance that none of the notes were paid; that the note in suit was given for the 192-dollar note and the 1,600-dollar note plus interest; that the latter note was given for Kansas land, was merged in the note for $1,-925.33, and was given to take up the other notes, including principal and interest. Plaintiff still held the original notes at the time of the trial and introduced them in evidence as a part of his case in chief. The debt evidenced by one of the original notes retained by him was a lien on the Kansas land. While holding onto the prior notes and the lien on the Kansas land he brought suit in Nebraska on the new note. He did not testify that the new or third note was a renewal or that it was given to extend the time for payment of the old or original notes or that it and the mortgage on the Nebraska real estate were given as additional or collateral security. There was no evidence of an agreement that the new note discharged the original indebtedness. The following is a well established rule of law:

The making and the accepting of a new promissory note for an existing one is not a payment of the maker's original indebtedness, unless there is a specific agreement to that effect. *Spear v. Olson,* 104 Neb. 139; *Auld v. Walker,* 107 Neb. 676; *Berwyn State Bank v. Swanson,* 111 Neb. 141; *Nebraska State Bank v. Walker,* 111 Neb. 203; *Farmers State Bank v. Dowler,* 112 Neb. 262; *Exchange Nat. Bank v. Schultz,* 113 Neb. 346; *City Nat. Bank v. Denslow,* 114 Neb. 600.

There is no direct proof that defendants as makers of

the old notes are not now liable thereon to plaintiff. The only parties to this litigation are the makers and the payee. No innocent purchaser is interested in the controversy.

With plaintiff's case as thus outlined it was defended in part under the following theory of the law:

"An accommodation maker of a promissory note is not liable to the party accommodated." *Empson v. Richter,* 113 Neb. 706; *Farmers Nat. Bank v. Ohman,* 112 Neb. 491; *Spangenberg v. Losey,* 116 Neb. 112.

In the present instance defendants testified they signed the new note and the mortgage at plaintiff's request to bolster up his credit in Kansas until September 15, 1922, the date fixed by the parties for the surrender of both instruments. Other testimony on behalf of defendants tended to prove the following facts: When the note and the mortgage in controversy were signed, defendants did not have the title to the hotel property. Papers relating to the purchase thereof by defendants had also been left at the First National Bank of Wilcox, Nebraska, in charge of William Halstead, cashier. That property had been traded to defendants for a quarter section of land in Frontier county, Nebraska, and the title to the latter tract was involved in an action pending in the supreme court on appeal. Under an agreement obligating plaintiff to surrender the new note and the mortgage as accommodation paper by September 15, 1922, defendants signed them. The appeal was not determined until May 1, 1925. *Sponsler v. Max,* 113 Neb. 477. There is evidence of the facts thus outlined.

The rejoinder of plaintiff, as presented in an able argument, was that all evidence tending to prove the defense of accommodation paper was incompetent, leaving nothing to support the judgment below; his view of the defense being based on the contention that the testimony assailed as incompetent orally contradicted the terms of a written contract creating the following escrow:

"We are this day depositing in escrow with the First National Bank, Wilcox, one mortgage and note to be turned

over to R. C. Willis when title to lots 25 and 26, block 7, is turned to Winfield Sponsler; the understanding being that, if title is not turned to Winfield Sponsler and the other papers now in escrow with said bank are turned back to the original depositors, then this mortgage and note are to be turned back to Winfield Sponsler.

<div style="text-align:center">

"R. C. Willis, Leoti, Kansas.

"Winfield Sponsler."

</div>

There seems to be a fatal defect in this instrument as an escrow. It does not bear the name of or bind Mattie Sponsler, a party to the note and the mortgage. She pleaded and testified that the hotel property was the homestead of defendants. She testified also that she never saw or authorized the escrow. The husband testified that his wife was not present when the escrow was signed, that he never read it, that he signed his own name to it supposing it conformed to the accommodation agreement, and that he told Halstead not to deliver the note and mortgage to plaintiff. In addition, the mortgage in the hands of Halstead showed on its face that Mattie Sponsler was a party to it. An escrow should be made by all parties to the instrument deposited. 21 C. J. 870, sec. 12. Oral evidence that the note and the mortgage were accommodation instruments was properly admitted. An unconditional delivery was essential to a foreclosure. Though plaintiff denied the making of the accommodation agreement, there was a clear preponderance of the evidence in favor of defendants on the issues that they were accommodation makers and that there never was an unconditional delivery of the note and the mortgage. It follows that error does not appear in the proceedings and judgment of the district court.

<div style="text-align:right">

AFFIRMED.