STANDARD INVESTMENT COMPANY, APPELLANT, V.
MARTIN FISHER, APPELLEE.

FILED MARCH 16, 1934. No. 28832.

*Harry R. Ankeny*, for appellant.

*J. C. McReynolds*, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and MEYER, District Judge.

GOSS, C. J.

Plaintiff sued Martin Fisher and N. F. Babson upon a promissory note. Babson, though served, defaulted. The jury returned a directed verdict against Babson and returned a verdict in favor of Fisher. From a judgment in favor of Fisher, plaintiff appealed.

On May 15, 1931, Fisher executed and delivered the note for $199, due September 1, 1931, to N. F. Babson and Vic Christensen. On May 29, 1931, these payees, for value, indorsed and delivered the note to plaintiff, which sued as owner and holder in due course. Babson and Christensen were insurance solicitors for United Insurance Company of Lincoln, Nebraska. They took the note to pay the premium for a 60 months' policy providing Fisher with indemnity for certain injuries, if accidental, and for loss of time by disease. The policy was issued May 16, 1931, and delivered before the note was sold to plaintiff. Fisher undertakes to rescind, now claiming fraudulent rep-

resentations by Babson and Christensen as to the insurance, though in his correspondence with Babson and with the insurance company he seems to have based his desire to have the note and policy canceled because of his financial inability. He finally returned the policy to the company on June 13, 1931, requesting its cancelation and that the note be returned. The insurance company wrote him the policy would be held subject to his order.

By his answer defendant denied that plaintiff was a holder in due course; alleged that plaintiff was not the real party in interest, but that it is a dummy corporation owned and controlled by the insurance company, which was the real party in interest; that there was fraud in the inception of the note whereby Babson and Christensen represented to defendant that the full amount of "one year's premium" on a policy was the sum of $172, but by deceit and fraud they wrote into the note and made it out in the sum of $199. There were other recitals in the answer, but it is not necessary to notice them as they were not submitted to the jury and are not involved in the assignments of error.

Section 62-402, Comp. St. 1929, says: "A holder in due course is a holder who has taken the instrument under the following conditions: First, That it is complete and regular upon its face; Second, That he became the holder of it before it was over-due and without notice that it had been previously dishonored if such was the fact; Third, That he took it in good faith and for value; Fourth, That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The fourth instruction to the jury is assigned as erroneous. It was as follows:

"Under the pleadings and evidence in this case the burden of proof is upon the plaintiff to establish by a preponderance of the evidence that it acquired title to the note in controversy as a holder in due course. It has failed to establish the good faith required by that burden

in that it has not made the investigations required of ·it to affirmatively establish that its representatives acted in good faith.

"This does not remove from the jury the issue that misrepresentations were made as to the amount of the insurance premium as represented in the note given. That question is to be considered by you just the same as if this . note still remained in the hands of the original payees."

By the second sentence of the instruction the court specifically decided as a matter of law that plaintiff failed to establish the good faith necessary to support the burden of proof required, in that it did not make the investigation required of it to establish that . its representatives acted in good faith. Appellant assigns that this instruction was erroneous because by the instruction the court decided as a matter of law that plaintiff was not a holder in due course. The officers of the investment company and of the insurance company seem to be the same persons and to hold to a considerable extent the same offices in both companies. That, however, is not incompatible with good faith on the part of plaintiff in becoming a holder in due course. Sale or pledge of a promissory note given to pay an insurance premium is unlawful prior to the delivery of the policy. Comp. St. 1929, sec. 44-1119. When Babson offered the note for sale and plaintiff purchased it on May 29, 1931, the officer asked Babson if the policy had been delivered and was answered in the affirmative. There is other evidence that the policy had been delivered to the insured and was then in the possession of the insured. As shown by the fourth, sixth and seventh instructions, the only defense submitted to the jury was the writing of the note for $199 instead of $172. All others were specifically withdrawn from the jury. Fisher's pleading and testimony, as well as the evidence and circumstances generally, make the whole matter of good faith and representations, both of Fisher and the insurance solicitors, peculiarly a question for the jury. Plaintiff was

handicapped by having its good faith in the purchase of the note decided against it by the court. It seems to us that it was for the jury to decide upon the entire evidence.

The reliance of the appellee is upon *State Bank v. House,* 114 Neb. 681. There a majority of this court reversed and dismissed a cause where there had been a directed verdict for plaintiff. The bank had purchased a note executed for the purpose of paying the first premium on an insurance policy. The insurance solicitor, Fowler, who was payee, never even forwarded the application and of course no policy was ever issued or delivered; in fact, the whole transaction was a fraud on the part of Fowler. The bank took the word of the payee that the policy had been delivered and the cashier did not inquire of the maker, who was a farmer living five miles from town, having a telephone, and known to the cashier for 15 years. The cashier merely asked Fowler, a perfect stranger, if the policy had been delivered and relied upon his affirmative answer without further inquiry. The court decided that this was not sufficient evidence to authorize a judgment which would allow the consummation of a fraud. But, in the instant case, the policy was delivered; and there is a dispute between Fisher and Babson as to the alleged misrepresentations about the amount of the premium, the truth of which is certainly not a matter which all men would unhesitatingly decide in favor of Fisher's version. Some ordinary, fair-minded jurors might reasonably draw other inferences from the evidence. He said in his answer the policy was to cost for one year's premium $172 and no more. The application signed by him recited the premium as $199 for 60 months. In his testimony he thought the amount was $171 or $172. In his letters he sought to have the policy canceled because his farm and chattels are mortgaged and farm prices are low, because it would take 600 bushels of wheat to pay the premium, and the like. These letters were written at and after the time the note was purchased by plaintiff. Can it be said as a matter of law that Fisher would have made

any other answers to plaintiff if plaintiff had inquired of him? He did not then claim his contracts were invalid. He was seeking their cancelation. A good jury might infer that his defenses are afterthoughts and spurious. So we do not think the facts are at all parallel with those in the *House* case. In such cases the good faith of plaintiff is for the jury. *Ostenberg v. Kavka,* 95 Neb. 314; *Union Nat. Bank v. Moomaw,* 106 Neb. 388; *Auld v. Walker,* 107 Neb. 676.

For the failure to submit the cause to the jury the cause must be reversed. The sixth instruction referred to a "material alteration" in the note. As applied to negotiable instruments, that phrase is defined in section 62-807, Comp. St. 1929. It refers to changes made in a negotiable instrument after the instrument is originally executed. The instrument here was never altered. The court in stating the issues raised by the answer did not include any plea that the note had been altered. The answer did not allege it. The real issues were whether plaintiff was a holder in due course and whether, if it was not a holder in due course, the note was unenforceable because, by misrepresentation and fraud, the maker was induced to sign a note for a larger and different amount than he claims was agreed upon as the amount of the premium for his insurance policy. On another trial this phrase will probably not be used.

The judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.